### FLORENCE W. COBB

*vs.*

### CUMBERLAND COUNTY POWER AND LIGHT COMPANY.

Cumberland.    Opinion November 15, 1918.

*General rule as to degree of care required when vehicles are approaching street junctions.
Rule as to negligence of the driver of an automobile being imputed to a
passenger riding with him.    Rights and liabilities of automobiles not
properly registered.    Rule where the liability sought to be imposed is a
statutory one.    Rule where recovery is sought because of common
law liability.    Rule as to violation of a Statute or Ordinance
constituting negligence per se.    General right of recov-
ery by person while violating an Ordinance or
Statute, providing that the violation does
not contribute to the injury.*

In an action brought to recover damages for personal injuries received by the
plaintiff, a passenger in an automobile operated by her husband and struck by
an electric car, after a verdict in favor of the plaintiff and upon defendants
motion and exceptions it is

*Held:*

1.    Upon the evidence, while the case is somewhat close, the verdict is not
regarded so palpably wrong as to warrant the intervention of this court.  .

2.    A certificate of registration issued to dealers under R. S., Chap. 26, Sec. 24, in
force when this accident happened, "to purchase, demonstrate, sell and exchange
automobiles" does not confer a general and unlimited license, but only for the
restricted uses named.

3.    As the automobile on this occasion was being used solely for pleasure it was,
so far as this case is concerned, an unregistered car in violation of R. S., Chap.
26, Sec. 28.

4.    It is a general rule that penal statutes are to be construed strictly and not to
be extended beyond their obvious import.

5.    The fact that a car is unregistered in violation of this statute, does not con-
stitute negligence per se, and does not preclude a plaintiff from recovering in a
common law action of negligence, unless such violation is the direct and proxi-
mate cause contributing to the act.

6. The non-registration of this car had no causal connection with the accident and therefore the violation of the statute did not bar the plaintiff's right of recovery.

7. This case is clearly distinguishable from the cases of *McCarthy* v. *Leeds*, 115 Maine, 134, and *McCarthy, Adm'r*, v. *Leeds*, 116 Maine, 275, because the right of action against a town for defect in the highway is purely a creature of statute. The duty imposed upon the town is only towards lawful travelers, and one traveling in violation of law is not deemed a lawful traveler within the purview of the statute so far as the town is concerned.

Action on the case to recover damages caused by the alleged negligence of defendant company. Verdict for plaintiff in the sum of $775. Motion for new trial filed by defendant, and also exceptions to certain rulings of presiding Justice. Motion and exceptions overruled.

Case stated in opinion.

*Frank H. Haskell*, for plaintiff.

*Bradley & Linnell, and William Lyons*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

CORNISH, C. J.   This is an action on the case brought to recover damages for personal injuries received by the plaintiff while a passenger in an automobile operated by her husband, and struck by an electric car operated by servants of the defendant. A verdict for $775 was rendered in favor of the plaintiff and the case is before the Law Court on defendant's motion and exceptions.

MOTION.

The accident occurred about eleven o'clock in the evening of April 17, 1917, in the city of Portland. Mr. and Mrs. Cobb with five other passengers entered Congress Street, which runs in a general easterly and westerly direction from Oak Street, which runs in a general northerly and southerly direction. The approach to Congress Street was from the southerly side. The purpose of Mr. Cobb was to cross the electric tracks on Congress Street, and then turning to the left to proceed westerly on the northerly side. At the same time a car was approaching and moving easterly on the southerly track of the electric railroad.

The plaintiff and her husband claim that as they emerged from Oak Street the electric car was quite a distance to the west on Congress

Street and seemed to be slowing down as if to stop, that they supposed they had ample time in which to cross without incurring any danger whatever, that the husband gave the hand signal and proceeded slowly on his way straight across the tracks, and when the rear wheels of the automobile had passed nearly over the southerly track it was violently struck by the car, thrown around upon the northerly track and headed toward the west.

The defendant's contention is that the electric car was coasting along Congress Street at a rate of four or five miles an hour, and was under complete and watchful control, that the automobile on emerging from Oak Street did not proceed straight on but turned easterly and proceeded along Congress Street in the same direction as the electric car for a distance of about twenty-five feet, and then darted suddenly toward the track and without warning went directly in the path of the car at a point so close to it that notwithstanding the immediate application of the brakes the collision could not be averted. These were the sharp contentions as to the manner in which the accident happened. The evidence was flatly contradictory, and the jury accepted the plaintiff's view.

So far as the negligence of the defendant is concerned it should be remembered that the collision took place at a street junction, a place where the electric car and the automobile are on an equality, and a close watch is required on the part of the motorman. *Marden* v. *Street Railway Co.*, 100 Maine, 41. This rule as to the duties of drivers of all vehicles at street junctions must be strictly observed. It tends to safety in travel.

When questioned in regard to his conduct the motorman testified: "If we follow an automobile and a hand signal is given, we understand he is going across in front of us either in one direction or the other; but an automobile coming out of a side street to cross directly in front of us, and give us a hand signal, they either wait or take their chances of going across." This answer may have given to the jury the impression that the motorman claimed a priority of passage or was regardless of or at least indifferent to the rights of travelers approaching from a side street.

So far as the plaintiff's want of due care is concerned it should be noted that she was merely a passenger sitting on the rear seat, that her husband, an experienced driver, was in full management and control of the machine, and even though he might be deemed guilty

of contributory negligence, his negligence was not imputable to her. *Denis* v. *Street Railway Co,.* 104 Maine, 39. It further appears that she did not blindly rely on him because she also looked, saw the car some distance up the street, and observed nothing to indicate peril in crossing the track.

Without further discussion we would say that while the case is somewhat close, we do not regard the verdict so palpably wrong as to warrant our intervention.

EXCEPTIONS.

The exceptions involve two questions: First, whether the automobile, considering the purpose for which it was being used at the time, was legally registered? Second, if not, whether non-registration is a bar to recovery?

As to the first point, it appears that this automobile was registered under the provisions of R. S., Chap. 26, Sec. 24, then in force. This section provided that instead of the separate and individual registration of each car by a manufacturer or dealer, such manufacturer or dealer could obtain a certificate of registration bearing a general distinguishing number or mark, together with five number plates, so that for the specified number of cars the same number and distinguishing mark might be used. This was called a certificate of registration "to purchase, demonstrate, sell and exchange automobiles." It was not a general and unlimited license for all purposes and uses, but for the restricted uses named. It did not include riding for pleasure nor for hire. On this occasion the auto was being used obviously for no one of the restricted uses, but for pleasure alone, and therefore so far as this particular trip was concerned, and as relating to this accident, it was the same as if the car had not been registered at all.

This brings us to the second and vital point, whether, considering this as an unregistered car, the plaintiff is thereby precluded from recovering in this common law action for negligence.

We are aware that the Massachusetts Court has so construed the registration statute of that State as to render an unregistered car a trespasser and an outlaw, having no rights which even a negligent party is bound to respect, and to whose occupants no duty is owed by the traveling public except to refrain from wilful and wanton injury.

The leading Massachusetts case is *Dudley* v. *Northampton Street Railway*, 202 Mass., 443, a decision rendered by a divided court, and the opinion likens such an unregistered car to a runaway horse, citing *Richards* v. *Enfield*, 13 Gray, 344, and *Higgins* v. *Boston*, 148 Mass., 484. Those citations are not precedents for *Dudley* v. *Northampton St. Ry.* because they are not actions at common law, but statutory actions against municipalities arising from defects in the highway, a distinction which will be noted later in discussing *McCarthy* v. *Leeds*, 115 Maine, 134, and *McCarthy, Adm'r,* v. *Same*, 116 Maine, 275. To the same class belongs *Feeley* v. *Melrose*, 205 Mass., 329.

But the decision in *Dudley* v. *Street Railway* has been followed by the Massachusetts Court in subsequent cases, and is unquestionably the law of that Commonwealth today. *Chase* v. *N. Y. Cen. R. R.*, 208 Mass., 137, 158; *Love* v. *Street Railway*, 213 Mass., 137; *Holden* v. *McGillicuddy*, 215 Mass., 563; *Deane* v. *Boston Elevated Ry.*, 217 Mass., 495; *Gould* v. *Elder*, 219 Mass., 396; *Kovnosky* v. *Quillette*, 226 Mass., 474; *Rolli* v. *Converse*, 227 Mass., 162.

It would seem however that this reaffirmation has been at times somewhat reluctant because in *Bourne* v. *Whitman*, 209 Mass., 155, 172, the court in commenting upon the *Dudley Case* said: "Some of us were disinclined to lay down the law so broadly and the opinion of the Court was not unanimous, but the doctrine has been repeatedly reaffirmed and is now the established law of the Commonwealth."

The Massachusetts cases rest wholly upon the interpretation of the words of the statute. They recognize and concede the common law doctrine that the violation of a statute or ordinance does not constitute negligence per se and does not prohibit a plaintiff from recovering in an action of negligence unless such violation is the direct and proximate cause contributing to the act, but they hold that it does not apply. The most striking illustration perhaps is *Bourne* v. *Whitman*, 209 Mass., 169, cited supra, where it was held that an operator who has violated the statute which provides that "no person shall operate an automobile. . . . unless specially licensed" etc., may recover in an action of tort, his unlawful act being regarded as punishable under another section of the statute, but not as rendering him a trespasser on the highway.

It is only in the case of non-registration that the Massachusetts Court has construed the statute so broadly, and we think they have read into the statute more than its language will permit and have

attached to the consequences of non-registration more than the legislative enactment will warrant. The statutory provisions are almost identically the same in the two States, so that it is impossible to distinguish the Massachusetts cases by reason of a difference in the statutes.

We therefore take up our own statute with a view to determining whether the Legislature in the case of non-registration has created a duty to other travelers on the highway or only a public duty to be enforced in the ordinary administration of the criminal law, in other words whether the offender is in effect penalized beyond the express provisions of the statute.

The general rule, which needs no citation of authorities, is that penal statutes are to be construed strictly and not to be extended beyond their obvious import. The penalties to be imposed are those expressed in clear and explicit terms. Inferential penalties are not to be discovered and enforced.

Sec. 28 of R. S., Chap. 26, reads as follows: "No motor vehicle of any kind shall be operated by a resident of this State upon any highway . . . unless registered as provided in this chapter, and no person, a resident of the State, shall operate a motor vehicle upon any highway . . . unless licensed to do so under the provisions of section thirty-one." Other minor requirements as to sale and exchange are added, and in section thirty-three it is provided that whoever violates any of the provisions of the nine preceding sections shall be punished by a fine not exceeding fifty dollars or by imprisonment not exceeding ten days.

No distinction is made between any of the offenses. The same penalty within fixed limits is meted out to all. Non-registration of the machine is made no greater crime than non-licensing of the driver. It was within the power of the Legislature to impose such penalties, within constitutional limitations, as it saw fit. It imposed a small fine or a short imprisonment. It might have added the forfeiture of the car, as in the case of the illegal transportation of intoxicating liquors, Public Laws, 1917, Chap. 294, or it might have subjected the owner of the unregistered car and the occupants to civil liabilities, but it did neither. The difference between wrongs to the public and to the individual is well marked and the Legislature in other acts recognizes both. Thus in R. S., Chap. 26, Secs. 2-6,—the law of the road, so-called,—there are certain provisions as to travelers turning to the

right, not obstructing passage, using bells, etc., and section 6 reads: "Any person injured by violation of either of the previous sections may recover damages in an action on the case commenced within one year. Such violator forfeits not less than one nor more than twenty dollars, to be recovered on complaint made within sixty days." Here both a penalty and the liability to civil action are expressly stated.

An apt and striking illustration may be found in the legislation and decisions of Connecticut on the precise point under consideration. Under the Public Acts of Connecticut, 1907, Chap. 22, automobiles were required to be registered and a penalty was provided for violation of the law. Under that act it was held that a party could recover against a municipality for injuries sustained from a defect in the highway although his car was unregistered. *Hemming* v. *New Haven,* 82 Conn., 661. It should be observed that the contrary rule prevails in this State, *McCarthy* v. *Leeds,* 115 Maine, 134; *McCarthy, Adm'r,* v. *Leeds,* 116 Maine, 275, but that does not affect the force of the illustration. Subsequently the statute of Connecticut was amended and an additional liability was placed upon the violator, Public Laws Conn, 1911, Chap. 85. This expressly provided in addition to the penalty previously imposed, that no recovery should be had by the owner, operator or passenger of an unregistered motor vehicle "for any injury to person or property received by reason of the operation of said motor while in or upon the public highways in this State." Under this act the owner of an unregistered car has been held to be absolutely precluded from maintaining an action for negligence. *Stroud* v. *Water Commissioners,* 90 Conn., 412. No other conclusion could well have been reached because the taking away of the violators civil rights was distinctly specified. Nothing was left to implication.

The Legislature of Maine has not seen fit to impose this liability upon the violator of the registration section, and the court does not feel justified in reading such a drastic clause into the section, and in effect multiplying many times the fine imposed by statute.

We see nothing in the language of the registration clause which differentiates it from the license clause. They follow each other and together constitute one sentence. They are expressed in substantially the same language: "No motor vehicle shall be operated . . . unless registered." "No person shall operate a motor vehicle unless

licensed." Their breach is followed by the same penalty. We can discover no legislative intent of civil disabilities lurking in one clause which does not pertain to the other. The license clause is held by the Massachusetts Court to be non-preclusive. Why should not the registration clause be the same? If in practice either should be held prohibitive of the right to maintain a civil suit, there are more practical reasons for attaching the prohibition to the animate non-licensed driver than to the inanimate unregistered car. An inert automobile of itself is harmless, whether registered or not. It is only when in motion that danger attaches. But an unlicensed driver operating a machine may be the cause of much injury. "What is gained by the display of a license number is not the avoidance of collisions but the more ready identification of the machine and its responsible owner" says the New Jersey Court in *Shaw* v. *Thielbar,* 82 N. J., Law 23. The act providing for registration has no tendency to prevent collisions, while that requiring the licensing of operators does have that tendency, in so far as it may prevent incompetent persons from managing an engine fraught with such capacity for injury. The Legislature however has made no distinction between the two and has provided merely a penalty in either case, and the same penalty.

This construction brings us back to the familiar principle that the right of a person to maintain an action for a wrong committed upon him is not taken away because at the time of the injury he was disobeying a statute, provided this disobeyance in no way contributed to the injury. He is not placed outside the pale of the law merely because he was committing a misdemeanor. That would be a wrong to the public, but not to the other party in the civil action. Such violation may in certain cases be evidence of negligence but it is not conclusive. *Ross* v. *Gilmore,* 72 Maine, 194; *Burbank* v. *Bethel Steam Mill Co.,* 75 Maine, 373; *Neal* v. *Randall,* 98 Maine, 69; *Wood* v. *Me. Cen. R. R. Co.,* 101 Maine, 469; *Moore* v. *Same,* 106 Maine, 297; *Kimball* v. *Davis,* 117 Maine, 187, 103 At., 154; *Kidder* v. *Dunstable,* 11 Gray, 342; *Spofford* v. *Harlow,* 3 Allen, 176; *Counter* v. *Couch,* 8 Allen, 436; *Hall* v. *Ripley,* 119 Mass., 135; *O'Brien* v. *Hudner,* 182 Mass., 381; *Slattery* v. *Lawrence Ice Co.,* 190 Mass., 79; *Jashnig* v. *Ferguson Co.,* 197 Mass., 364; *Bourne* v. *Whitman,* 209 Mass., 169; *Holland* v. *Boston,* 213 Mass., 560; *Holden* v. *McGillicuddy,* 215 Mass., 563; *Conroy* v. *Mathes,* 217 Mass., 91; *Carrington* v. *Worcester St. Ry.,* 222 Mass., 119.

The application of this governing rule to the case at bar is obvious. The non-registration had no causal connection with the accident whatever. It no more contributed to the collision in this case than did the color of the car. The one was as immaterial as the other. Therefore the violation of the statute did not bar the plaintiff's right of recovery.

This view of the effect of the registration section is uniformly held, outside of Massachusetts, so far as we have been able to ascertain. *Birmingham Ry. & L. Co.* v. *Aetna Acc. & Liab. Co.*, 184 Ala., 604; *Stovall* v. *Corey Highlands Land Co.*, 189 Ala., 516; *Shimoda* v. *Bundy*, 24 Calif. App., 677; *Atlantic Coast Line R. R. Co.* v. *Weir*, 63 Fla., 69, A. C. 1914, A. 126 and note; *Moore* v. *Hart*, 171 Ky., 725; *Lockridge* v. *Minneapolis R. R.*, 161 Iowa, 74; *Armstead* v. *Lounsberry*, 129 Minn., 34, 56 L. R. A., N. S. 628 and note; *Shaw* v. *Thielbar*, 82 N. J. Law, 23; *Hyde* v. *McCreery*, 130 N. Y. Supp., 269; *Black* v. *Moree*, 139 Tenn., 73; *So. Ry. Co.* v. *Vaughan*, 118 Va., 692, L. R. A., N. S., 1916, E. 1222 and note; *Derr* v. *R. R. Co.* 163 Wis., 234; 2 R. C. L., 1208; 2 Elliott, Roads and Streets, 3rd ed., sec. 1115.

The defendant however contends that the recent decisions of this court have virtually adopted the Massachusetts rule. *McCarthy* v. *Leeds*, 115 Maine, 134; *McCarthy, Adm'r*, v. *Leeds*, 116 Maine, 275. Not so. The first case was brought by the owner of an unregistered automobile against the inhabitants of a town to recover for injuries sustained by reason of a defective bridge. The second was brought by the administrator of the estate of two of the passengers to recover on the same ground. Judgment was rendered in favor of the defendants in both actions, and the decisions were based squarely and solely upon the proposition that the liability of a town for defects in its ways and bridges is purely statutory and the duty owed by the town is only to lawful travelers; that the occupants of an unregistered automobile are not lawful travelers so far as the town is concerned, and therefore no duty is owed to them by the town except to refrain from wilful injury. This doctrine is well established in this State by a long line of analogous decisions; thus one using the street as a playground is not a lawful traveler, within the purview of the statutory liability of a town, *Stinson* v. *Gardiner*, 42 Maine, 248; nor for horse racing, *McCarthy* v. *Portland*, 67 Maine, 167; nor a traveler on the Lord's Day, under the old statute, *Bryant* v. *Biddeford*, 39 Maine, 193; *Hinckley* v. *Penobscot*, 42 Maine, 89; *Cratty* v. *Bangor*, 57 Maine, 423.

The cases of *McCarthy* v. *Leeds*, supra, simply enforce the same rule, and the court drew the distinction between that class of actions and a common law action for negligence in these words: "It must be distinctly borne in mind that this is not a common law action of negligence against an individual or a corporation, but a statutory remedy against a municipality, and the rights of the traveling public and the liability of the municipality are limited by the scope of the statute. . . . Here as in the case of the violation of the Sunday law, it is not a question of causal connection between the violation of the statute and the happening of the accident. The same causes would be at work to produce an accident on Monday or Tuesday as on Sunday. So in the case at bar the mere non-registration can hardly be regarded as a contributing cause. The railing of the bridge had no more strength to withstand the impact of a registered than of an unregistered car. The decision does not rest upon the common law principle of causal connection." *McCarthy, Adm'r*, v. *Leeds*, 116 Maine, 275. Evidently the court anticipated the probable necessity of determining at some future time the precise question which has arisen in this common law action now under consideration, and left itself free to decide that question upon common law principles when it should arise. The decisions in these two distinct classes of cases are entirely consistent.

It is therefore the opinion of the court that the entry should be,

*Motion and exceptions overruled.*